UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PHILLIP G. LAWRENCE, and all other
persons similarly situated,

      Plaintiff,

      v.

GALE NORTON, Secretary of the
DEPARTMENT OF THE INTERIOR, and
the DEPARTMENT OF THE INTERIOR,
Agency,

      Defendants.

NO. CV-04-0203-EFS

**ORDER GRANTING THE
REMAINDER OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

On January 6, 2006, the Court entered an Order granting in part and holding in abeyance in part Defendants' Motion for Summary Judgment. (Ct. Rec. 45.)  In that Order, the Court granted summary judgment on Plaintiff Phillip Lawrence's non-discrimination claim in favor of Defendants Gale Norton and the Department of the Interior (collectively hereafter referred to as "the Department") and set a telephonic hearing for January 18, 2006, to hear oral argument on whether the Department should also be granted summary judgment on Plaintiff's remaining discrimination claim. *Id.*

During the January 18, 2006, hearing, in addition to arguing his client's position on the discrimination claim, Plaintiff's counsel moved the Court for leave to supplement the record with three exhibits. (Ct.

ORDER ~ 1

Rec. 48.) Plaintiff's counsel's request was granted and Plaintiff was given to February 1, 2006, to supplement the record with the three exhibits described during the telephonic hearing. *Id.* In addition, the Court ordered Plaintiff to submit a supplemental memorandum that explained how the supplemental exhibits help him avoid summary judgment on his discrimination claims. *Id.* Although no supplemental memorandum was filed by Plaintiff, Plaintiff did submit the three supplemental exhibits and a declaration by Plaintiff's counsel that briefly discusses the supplemental exhibits. (Ct. Rec. 47.) In response to the Plaintiff's supplemental filings, the Department submitted a supplemental memorandum on February 15, 2006, which discusses the supplemental exhibits' effects on its request for summary judgment on Plaintiff's discrimination claim. (Ct. Rec. 52.)

After reviewing the original and supplemental materials provided by the parties, relevant authority, and oral arguments made during the January 18, 2006, hearing, the Court is fully informed on the remaining discrimination claim issues and hereby grants the portion of the Department's Motion for Summary Judgment relating to those issues.

## I. Factual Background

Plaintiff has been employed by the Department since June 13, 1976, as a forrester and enrolled in the Civil Service Retirement System during this period. On May 5, 1999, the Department received Plaintiff's request for enhanced firefighter retirement annuity benefits ("enhanced retirement benefits") as provided for under 5 U.S.C. § 8336(c). Plaintiff's request sought retroactive enhanced retirement benefits from the initial date of his employment, with coverage continuing while

employed.  On April 5, 2002, the Department denied Plaintiff's request in a two-part decision.  In Part I of the decision, Plaintiff was denied enhanced retirement benefits from June 13, 1976, to May 4, 1998, one-year prior to Plaintiff's request, based on the Department's conclusion Plaintiff's request was untimely.  In Part II of the decision, the Department denied Plaintiff's request for enhanced retirement benefits after May 5, 1998, following its finding Plaintiff was not qualified to receive enhanced retirement benefits.

Plaintiff appealed the Department's denial of benefits to the Merit Systems Protection Board ("MSPB") by filing a Narrative Claim on June 28, 2002, claiming he was entitled to timely actual notice of his right to apply for enhanced retirement benefits and that the benefits were otherwise improperly denied.  On September 27, 2002, pursuant to an agreement with presiding Administrative Judge James H. Freet, the Department rescinded Part II of its April 5, 2002, decision.  The Department's rescission was intended to limit Plaintiff's appeal to the Department's denial of benefits from June 13, 1976, to May 4, 1998, based on this alleged untimeliness.  Consequently, Judge Freet did not consider whether Plaintiff was entitled to enhanced retirement benefits after May 4, 1998, and limited his decision to determining whether the Department's denial of enhanced retirement benefits prior to May 5, 1998, was proper.

On June 26, 2003, Judge Freet issued the MSPB's Initial Decision, in which the Department's pre-May 5, 1998 denial of benefits based on Plaintiff's untimely filing, was affirmed.  Subsequently, Plaintiff petitioned the MSPB for review of Judge Freet's decision.  Plaintiff's petition for review was denied in a Final Order issued on May 24, 2004,

in which the MSPB found Plaintiff offered "no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome." (Ct. Rec. 20-6 at 2.)  On November 10, 2004, pursuant to his right to appeal the MSPB's final order, Plaintiff filed suit in the Eastern District of Washington[1] seeking review of the Department's denial of enhanced retirement benefits and claiming the Department had discriminated against him based on his race.

In his First Amended Complaint, Plaintiff requests injunctive relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, based on what he believes were discriminatory employment practices utilized by the Department to withhold the above-referenced enhanced retirement benefits from him based on his Native American race. (Ct. Rec. 13.)  In his prayer for relief, Plaintiff specifically asks the Court to declare (1) the Department's refusal to find Plaintiff qualified

---

[1] MSPB decisions are generally reviewed by the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1).  However, where there is a separate claim of discrimination, the plaintiff is entitled to *de novo* review in a federal district court. *Id.* § 7703(b)(2).  Moreover, if the plaintiff raises both discrimination and distinct nondiscrimination claims arising from the MSPB determination, a "mixed case," the district court has jurisdiction over both types of claims. *Romain v. Shear*, 799 F.2d 1416 (9th Cir. 1986), *cert. denied*, 481 U.S. 1050 (1987).  Thus, jurisdiction is proper in this Court because Plaintiff has raised a discrimination claim under Title VII.

ORDER ~ 4

for enhanced retirement benefits was a discriminatory practice based on Plaintiff's race and (2) the Department administered federal law and regulations to the exclusion and/or prejudice of its Native American employees, including Plaintiff, on account of those employees' race. *Id.* § XVII.   Although Plaintiff's discrimination claim is not clearly outlined in his First Amended Complaint, the Court presumes, from his two discrimination-based claims for relief, that he intends to prove Title VII liability under the two separate theories of disparate treatment and disparate impact.   In its Motion for Summary Judgment, the Department seeks summary judgment on Plaintiff's discrimination claim, arguing Plaintiff is incapable of recovering under either theory of liability.

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.*   There is no genuine issue for trial if the

evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III. Analysis

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging discrimination under Title VII may prove his claim under the separate theories of disparate treatment and disparate impact. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). As stated above, based on the declaratory relief sought by Plaintiff, the Court presumes Plaintiff intends to prove his Title VII claim under both

theories of liability.  Plaintiff's separate efforts are attacked by the Department in its Motion for Summary Judgment and recently filed supplemental memorandum.  Accordingly, the Court addresses both theories to determine whether sufficient evidence exists to permit Plaintiff's discrimination claim to survive the Department's request for summary judgment.

**A. Disparate Treatment**

In Title VII suits based on a theory of disparate treatment, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.[2] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  A *prima facie* case of discrimination is established by introducing evidence that gives rise to an inference of unlawful discrimination.  *Id.*  After a plaintiff has met his initial *prima facie* burden, a presumption arises that his employer unlawfully discriminated against him.  *Id.*  This presumption shifts the burden of production to the defendant to produce an explanation for its allegedly discriminatory action, i.e. show the defendant's complained of action was based on a "legitimate, nondiscriminatory reason."  *Id.* at 506-07.  In meeting its burden, the defendant must "clearly set forth, through the introduction of admissible evidence, reasons for its action which, if believed by the

---

[2] When considering a motion for summary judgment offered against a plaintiff in a Title VII suit, the court presumes the plaintiff has met his initial burden of establishing a *prima facie* case of disparate treatment discrimination. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

ORDER ~ 7

trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Texas Dep't of Cmty. Affairs*, 450 U.S. 248, 254-55 (1981).

If the defendant meets its burden of production, "the presumption of unlawful discrimination 'simply drops out of the picture'" and the plaintiff is then required to persuade the trier-of-fact that the defendant's explanation for its action was merely pretext for its discriminatory motives. *Bradley*, 104 F.3d at 270 (quoting *St. Mary Honor Ctr.*, 509 U.S. at 511). In doing so, the plaintiff must produce "specific, substantial evidence of pretext." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

In this instance, because the Court is considering the Department's Motion for Summary Judgment on Plaintiff's Title VII discrimination claim, the Court presumes Plaintiff has met his initial burden of establishing a *prima facie* case of unlawful discrimination. *See Bradley*, 104 F.3d at 270. For this reason, the Department is presumed to have unlawfully discriminated against Plaintiff by refusing to find him qualified to receive enhanced retirement benefits and the Department is charged with producing sufficient evidence to rebut this presumption by demonstrating its refusal was based on a "legitimate, nondiscriminatory reason." *St. Mary Honor Ctr.*, 509 U.S. at 506-07.

In its effort to rebut the presumption of unlawful discrimination, the Department explains that its decision to deny Plaintiff's request for enhanced retirement benefits was solely based on its conclusion Plaintiff's request was untimely and not based, as Plaintiff suggests, on Plaintiff's race. In other words, according to the Department, had

a similarly situated non-Native American employee requested enhanced retirement benefits, that request would have also been denied due to its untimeliness.

This issue was previously addressed by the Court in its January 6, 2006, Order when it concluded the MSPB's final order affirming the Department's denial of enhanced retirement benefits to Plaintiff was not capricious, an abuse of discretion, or otherwise not in accordance with law. (Ct. Rec. 45.) Based on that conclusion, the Court granted summary judgment in the Department's favor on Plaintiff's non-discrimination claim. *Id.* For those same reasons, the Court now concludes the Department's refusal to find Plaintiff qualified for enhanced retirement benefits based on its belief Plaintiff's request was untimely, to be a legitimate and nondiscriminatory reason for its adverse action. Accordingly, the Department's burden of production has been met and the onus of producing "specific, substantial evidence" that the Department's explanation is merely pretext for discriminatory motives falls on Plaintiff. *Wallis*, 26 F.3d at 890.

Aside from a blanket assertion that the Department discriminated against him by refusing to find him qualified for enhanced retirement benefits based on his race in his First Amended Complaint, Plaintiff has offered no factual evidence or legal argument to support his claim of disparate treatment. Instead, Plaintiff simply recites statistics he believes supports his theory that Native Americans employed by the Department were not told of their eligibility to apply for enhanced retirement benefits. Because Plaintiff offers no evidence that the Department's explanation for denying his request for enhanced retirement

benefits was pretext for discriminatory motives, the Court finds Plaintiff would be unable to persuade the trier of fact that he was intentionally discriminated against under a disparate treatment theory of liability. *See St. Mary Honor Ctr.*, 509 U.S. at 511.   Therefore, because Plaintiff is unable to make the requisite disparate treatment showing required under a Title VII, the Court finds the Department's request for summary judgment on this issue proper and grants such request.

**B. Disparate Impact**

Disparate impact claims challenge "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1480 (9th Cir. 1987).   Unlike disparate treatment cases, "[i]llicit motive or intent is irrelevant because impact analysis is designed to implement Congressional concerns with the consequences of employment practices, not simply the motivation." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (quoting *Griggs*, 401 U.S. at 432) (internal quotations omitted).   Instead, "the focus in a disparate impact case is usually on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 993-94 (1988)).

To establish a *prima facie* case of disparate impact in a Title VII action, the plaintiff must: "(1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation . . . ." *Id.*   "Once the plaintiff

ORDER ~ 10

1  establishes a *prima facie* case of disparate impact, the burden shifts to

2  the defendant who may either discredit the plaintiff's statistics or

3  proffer statistics of his own which show that no disparity exists." *Id.*

4  (citing *Watson*, 487 U.S. at 997).   "The employer may also produce

5  evidence that its disparate employment practices are based on legitimate

6  business reasons, such as job-relatedness or business necessity." *Id.*

7  "Thereafter, the plaintiff must show that other tests or selection

8  devices, without a similarly undesirable [discriminatory] effect, would

9  also serve the employer's legitimate interest in efficient and

10 trustworthy workmanship." *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422

11 U.S. 405, 425 (1975)) (internal quotation omitted).

12      In his Memorandum Opposing the Department's Motion for Summary

13 Judgment, Plaintiff's argument in support of his discrimination claim is

14 limited to the following:

15      Plaintiff has met [his *prima facie*] burden in that recent
        discovery . . . established that of the two hundred forty-eight
16      (248) BIA employees listed in the 2004 Indian Forestry and
        Natural Resources National Directory, the vast majority of whom
17      are Native American, with job descriptions qualifying for fire
        fighting status, only seventeen (17) have applied for and only
18      one (1) employee has been approved for enhanced retirement
        benefits.
19
        Of all the many federal government employees qualifying for
20      enhanced retirement benefits, only fourteen (14) Native
        Americans listed in the 2004 National Directory have even
21      applied.   This is credible prima facie evidence that
        discrimination is at play.  The burden shifts to the Defendant
22      to explain the disparity.

23 (Ct. Rec. 25 at 19-20.)

24      The above-stated comments, as well as those made with regard to

25 Plaintiff's non-discrimination claim, seem to assert a belief that the

26 Department's process for notifying employees of their eligibility to

apply for enhanced retirement benefits has a disparate impact on Native American employees. Plaintiff appears to support this belief with statistics drawn from the 2004 Indian Forestry & Natural Resources National Directory ("National Directory") (Ct. Rec. __ Ex. 39) and answers provided by the Department to several interrogatories. (Ct. Rec. 28 at 58-62). Plaintiff's statistical analysis focuses on a list of 248 Bureau of Indian Affairs ("BIA") employees drawn from the National Directory and his belief that a "vast majority" of these 248 employees are not only Native Americans, but also qualified to applied for enhanced retirement benefits based on their fire fighting employment statuses. Because only seventeen of these 248 employees, fourteen of whom are Native Americans,[3] have applied for enhanced retirement benefits, Plaintiff deduces that the Department's enhanced retirement benefit notification practices have a disproportionately adverse impact on Native American employees.

The Department counters Plaintiff's disparate impact argument by pointing to what it believes are flaws in Plaintiff's statistical analysis and ultimate conclusions. In course of doing so, the Department highlights Plaintiff's failure to support his claim that a "vast majority" of the 248 above-described employees are Native American and qualified to apply for enhanced retirement benefits. In addition, the Department emphasizes Plaintiff's failure to offer evidence that a lower proportion of qualified Native American employees have applied for

---

[3] In an interrogatory response, the Department confirms that fourteen of the seventeen noted employees are Native American. (Ct. Rec. 28 at 61.)

ORDER ~ 12

1  enhanced retirement benefits than non-Native American employees. Lastly,

2  the Department criticizes Plaintiff's failure to show any causal

3  connection between its notification practices and any disparate impact

4  suffered by its Native American employees.

5      As noted above, Plaintiff's first task in establishing a *prima facie*

6  case of disparate impact discrimination is to identify the specific

7  employment practice being challenged. *Rose*, 902 F.2d at 1424. Although

8  not clearly stated, the Court finds Plaintiff has satisfied this

9  requirement in that he is challenging the Department's failure to provide

10 actual notice to all employees eligible to apply for the enhanced

11 retirement benefits he now seeks.

12     Plaintiff's second task in establishing a *prima facie* case of

13 disparate impact discrimination is to show the existence of an actual

14 disparate impact between Native American employees and non-Native

15 American employees. *See Id.* In doing so, Plaintiff must present

16 sufficient statistical evidence to support the finding of an actual

17 racial disparity between the two classes of employees. Because, as

18 discussed in greater detail below, Plaintiff has failed to submit

19 sufficient evidence to prove the existence of the claimed racial

20 disparity, he has failed to establish a *prima facie* case of disparate

21 impact discrimination. *Id.* For this reason, the Department is entitled

22 to judgment as a matter of law on Plaintiff's disparate impact theory of

23 liability.

24     The statistics offered by Plaintiff fail to demonstrate the

25 existence of a disparate impact for several reasons. First, Plaintiff's

26 claim that a "vast majority" of the 248 employees referred to are Native

Americans is unsupported.  Although the names are drawn from the National Directory, which includes contact information pertaining to employees working for the Bureau of Indian Affairs and numerous tribal government, no evidence has been submitted to prove a majority, or even a substantial portion, of those 248 individuals are Native American.

Second, Plaintiff's claim that "[o]f all the many federal government employees qualifying for enhanced retirement benefits, only fourteen (14) Native Americans listed in the 2004 National Directory have even applied" is misleading and also unsupported by the evidence. (Ct. Rec. 25 at 20.) In its interrogatory questions to the Department, Plaintiff limited its inquiry to a pool of 248 BIA employees pulled from the National Directory. (Ct. Rec. 28 at 15-57.)  These questions resulted in answers from the Department, in which fourteen of the 248 employees listed by Plaintiff, were identified as persons who had applied for enhanced retirement benefits and are Native American. *Id.* at 60-61.  Because Plaintiff's statistics are based on answers relating to the limited pool of 248 employees selected by Plaintiff, it is deceiving to imply that only fourteen Native Americans, of all the Native Americans employed by the federal government, have applied for enhanced retirement benefits. Accordingly, the Court finds Plaintiff's conclusion over broad and impermissible in light of the Department's limited answer.

Despite the above-described deficiencies, even if the Court were to assume Plaintiff's statistical representations were true, i.e. only fourteen of all eligible Native American employees have applied for enhanced retirement benefits, Plaintiff has nonetheless failed to demonstrate the existence of any disparate impact or racial disparity

between Native American and non-Native American employees.   The Court reaches this conclusion based on Plaintiff's failure to compare the impact of the Department's notification practices on its Native American and non-Native American employees.

Plaintiff's representation that a relatively small proportion of Native American employees have applied for enhanced retirement benefits is meaningless in the context of a disparate impact analysis unless evidence is presented to show the proportion of Native Americans applying for the benefits is less than the proportion of similarly situated non-Native American employees applying for the benefits.   Only by comparing the two classes respective application rates can a showing of disparate impact be made.   With no comparison, there is no showing Native Americans employees, such as Plaintiff, have been more harshly affected by the complained of employment practice than any other racial class of employees.   Thus, because no showing has been made that a lower proportion of Native Americans employees have applied for enhanced retirement benefits than similarly situated non-Native American employees, Plaintiff has failed to demonstrate the existence of a disparate impact and for this reason, Plaintiff may not recover under this theory of liability.

### IV. Conclusion

Because Plaintiff has presented insufficient evidence to survive summary judgment on his either of his two theories of Title VII liability, the Court grants summary judgment in favor of the Department on Plaintiff's discrimination claim and hereby dismisses this case.

///

///

Accordingly, IT IS **HEREBY ORDERED**: Defendants' Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED** (discrimination claim). Summary judgment in awarded in favor of Defendants on all claims brought against them by Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to:

(A) Enter this Order;

(B) Enter judgment in favor of Defendants on all claims alleged by Plaintiff in this action;

(C) Provide copies of this Order and the Judgment to Plaintiff and defense counsel; and

(D) Close this file.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this   28th   day of March, 2006.


                        S/ Edward F. Shea
                        EDWARD F. SHEA
                United States District Judge




Q:\Civil\2004\0203.MSJ.discrimination.claim.wpd




ORDER ~ 16